Kim **GAUDETTE** and Mark **Cinquegrana,** Petitioners,

v.

**DEPARTMENT OF TRANSPORTATION,** Respondent.

No. 87-3346.

United States Court of Appeals, Federal Circuit.

Nov. 6, 1987.

William J. Lafferty, Boston, Mass., argued, for petitioners.

Jonathan S. Baker, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Atty. Also on the brief was Mary N. Whigham Jones, Dept. of Transp., Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and FRIEDMAN and NIES, Circuit Judges.

NIES, Circuit Judge.

Petitioners Gaudette and Cinquegrana seek review of the final decision of the Merit Systems Protection Board, 32 M.S. P.R. 375, Docket Nos. BN07528610126, BN07528610133, dismissing, for lack of jurisdiction, their appeal from the action taken by the Department of Transportation, Federal Aviation Administration reassigning them from their positions as Air Traffic Control Specialist trainees, GS–11 to GS–9 positions. We *affirm.*

I

Both petitioners were developmental Air Traffic Control Specialists at the Boston Center, in an up-or-out program. The agency terminated petitioners' training because petitioners failed to make satisfactory progress. That action is not directly the subject of this appeal.[1]

Pursuant to Federal Aviation Administration (FAA) Order 3330.30B, developmental controllers who fail to progress may, under certain circumstances, be reassigned, if they agree, to other positions at the same or lower grade, including positions as controllers in less demanding facilities. Such reassignments are contingent upon available vacancies at the receiving facility, recommendation of the employee by the facility chief, acceptance by the chief of the receiving facility, and voluntary acceptance by the employee. This procedure provides the agency a means to retain individuals in whom it has invested considerable training resources and who have demonstrated the ability to work at a less complex center. If the conditions for reassignment are not met, however, the employee may be removed. In accordance with this policy, the agency offered to transfer petitioners at their requests to lower-grade positions at a tower where their lower level services could be used. The Boston Center had no positions below the full performance level.

Approximately two years later, petitioners appealed to the board alleging that they had been "involuntarily demoted" because the agency failed to apprise them that involuntary demotions could be appealed to the board. The agency concedes that it did not apprise petitioners of any appeal rights but argues that it was unnecessary to do so because the reassignments were voluntary. Prior to reassignment, petitioners signed statements acknowledging that the reassignments were made at their request and that, because they transferred for their personal convenience, they were not entitled to relocation expenses.

The administrative judge (AJ) waived the 20–day time limit for filing an appeal to the board because the agency failed to inform petitioners of appeal rights for an involuntary demotion. For the same reason, the AJ found that the petitioners had not made an "informed choice" in accepting reassignments, citing *Covington v. Department of Health & Human Services,* 750 F.2d 937 (Fed.Cir.1984) and *Scharf v. Department*

---

**1.** Both employees unsuccessfully challenged the training terminations through internal agency     grievance procedures.

*of the Air Force*, 710 F.2d 1572 (Fed.Cir. 1983). Therefore, per the AJ, the agency actions were involuntary demotions. The AJ then held that those adverse actions had been effected without the procedural protections required under 5 U.S.C. § 7513(b) (1982), and she ordered petitioners retroactively restored to their former positions with back pay and benefits.

The full board, in granting the agency's petition for review, found that petitioners were not misinformed but, on the contrary, had voluntarily accepted their downgradings. Consequently, petitioners' appeals were dismissed for lack of jurisdiction.

## II

### Issue

The sole issue is whether the agency's failure to give notice of appeal rights in connection with petitioners' transfer to lower-grade positions constitutes an involuntary demotion because the petitioners made uninformed decisions in accepting the positions.

## III

■ A reduction-in-grade effected by an agency can be an adverse action appealable to the MSPB. 5 U.S.C. § 7512 (1982); 5 C.F.R. § 1201.3(a)(1) (1987). However, the MSPB has no jurisdiction to review a voluntary employment action "initiated by" an employee. 5 C.F.R. § 752.401(c)(3) (1987). The phrase "initiated by" does not mean that the change must be suggested, in the first instance, by the employee, but rather, redundantly indicates that the employee must voluntarily accept an agency's proposal.

■ Petitioners base their assertion of involuntariness in this case on the agency's failure to inform them that an involuntary demotion may be appealed. Thus, per petitioners, their acceptance of the demotions was based on misinformation or a lack of information and cannot be binding as a matter of fundamental fairness and due process. Alternatively stated, petitioners

assert that they did not knowingly waive their statutory right of appeal.[2]

The board found that petitioners were not misinformed by the agency. The agency's written offer of a transfer and lower grade specifically referenced FAA Order 3330.30B on employment policies. It is undisputed that the petitioners knew that they could not stay in their positions at the Boston Center, having failed the training program and only full level positions being available. Also, it is undisputed that the stated agency policy regarding training failures did not provide for *involuntary* demotion. If the petitioners did not accept the offered transfers, their futures would have been uncertain. The agency did not know what action it would take, removal from the agency being a possibility. The one sure thing, however, was that petitioners would not have been *involuntarily demoted* to their present positions.

Under these circumstances, we agree with the board that, at most, petitioners were faced with a decision between two unpleasant alternatives, one of which was not fully delineated. An employee's choice in such circumstances does not render his or her decision involuntary, or make it one based on misinformation or lack of information. Petitioners knew as much as the agency concerning their future if they did not elect to transfer. No misinformation was given.

Petitioners read too much into the statement in *Covington* that a decision based on "lack of information" cannot be binding. 750 F.2d at 943. That statement was made in connection with circumstances where the agency had given *misinformation* and had an affirmative obligation to correct the misinformation by supplying the correct information, i.e., the lacking information. It does not mean that an employee must be counseled with respect to appeal rights on involuntary demotions in situations where the agency offers the employee the choice of a voluntary downgrade which, if accepted, would avert a possible removal action.

---

**2.** Petitioners do not assert that they were coerced by the agency or under duress to accept

the transfers. *See Christie v. United States,* 518 F.2d 584 (Ct.Cl.1975).

That the employee would prefer to stay in the position from which he or she faces possible removal and dislikes taking a pay-cut does not make their decision to accept the offer of a lower-grade position legally involuntary. Thus, those facts do not give rise to the duty of notice which the employees here seek to impose on the agency. Further it defies logic to say that a voluntary action by an employee is somehow made involuntary because of an agency's failure to advise of appeal rights or to counsel the employee on what constitutes involuntariness in a legal sense.

There was nothing unusual in petitioners' situation as failed controllers, and their treatment was in accordance with the agency's policy. Petitioners, in effect, ask us to overturn the agency policy of offering a transfer and to require the agency to involuntarily demote failed controllers—assuming a suitable position in the agency were available—so as to establish appeal rights. Petitioners presume such action would obviously be "fairer" to employees. We do not agree. While petitioners may prefer an adverse action on their records, others may not. In any event, petitioners assert no legal basis for placing the agency in a managerial straight jacket and requiring it to abandon the policies stated in FAA Order 3330.30B.

Finally, at oral argument, petitioners' counsel suggested that, if petitioners had accepted the reassignments with a reservation of appeal rights, they could have appealed to the board as having suffered an involuntary demotion. There is, of course, no way of knowing whether the government would have accepted petitioners' counterproposal, which appears contrary to the stated agency policy. But, in any event, that situation is not the one before us. Petitioners did not inadvertently waive appeal rights, there being none to waive in connection with their voluntary acceptance of demotion and reassignment.

## IV

Having reviewed the entirety of the record, we conclude that the board's finding that petitioners failed to establish that the demotions were other than voluntary is supported by substantial evidence. Accordingly, the decision is affirmed.

AFFIRMED.