NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

CLINTON L. KELLY, JR.,
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**DEPARTMENT OF TRANSPORTATION,**
*Intervenor*

2014-3144

Petition for review of the Merit Systems Protection Board in No. AT-0752-13-0043-I-1.

Decided: March 10, 2015

CLINTON L. KELLY, JR., Fairburn, GA, pro se.

KATRINA LEDERER, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, for respondent. Also represented by BRYAN G. POLISUK.

MICHELLE MUSGRAVE, Commercial Litigation Branch, Civil Division, United States Department of Justice,

Washington, DC, for intervenor. Also represented by
JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., DEBORAH A.
BYNUM.

---

Before LOURIE, BRYSON, and CHEN, *Circuit Judges.*

PER CURIAM.

Clinton L. Kelly, Jr., appeals from the final order of
the Merit Systems Protection Board, which affirmed the
administrative judge's decision that the Board lacks
jurisdiction to review Mr. Kelly's appeal from his reas-
signment. Because Mr. Kelly failed to make a non-
frivolous allegation that his reassignment was involun-
tary, we affirm.

## BACKGROUND

Mr. Kelly worked as an Air Traffic Control Specialist
at the Peachtree-DeKalb Air Traffic Control Tower (PDK)
in Atlanta, Georgia. *Kelly v. Dep't of Transp.*, No. AT-
0752-13-0043-I-1, 2013 MSPB Lexis 917, at *1 (Feb. 19,
2013) ("*Initial Decision*"). Mr. Kelly obtained the Level 7
certification required to work at PDK, commensurate with
the complexity of the systems and amount of air traffic at
that facility. *Id.* at 1–2.

Mr. Kelly requested transfer to the Atlanta Terminal
Radar Approach Control Tower (TRACON/A-80) at Atlan-
ta Hartsfield International Airport, which required Mr.
Kelly to first undergo extensive training to achieve Level
12 certification. *Id.* at 2; Petitioner's Br. at 12. Under
Agency policy at the time, if Mr. Kelly did not successfully
complete training, he would not retain his position at
TRACON/A-80, but "may be given an opportunity at a
lower level facility if a vacancy exists." *Initial Decision* at
*2; Respondent's Appendix at 22 ("R.A."). The Depart-
ment of Transportation (Agency) approved Mr. Kelly's
transfer to TRACON/A-80 and placed him in the required

training. *Initial Decision* at *2. After ten months of training, the Agency notified Mr. Kelly that his training had been discontinued based on the unanimous determination of his trainers that he failed to demonstrate an acceptable level of performance to warrant certification on the necessary radar equipment. *Id.*; R.A. 33–34. The Agency then offered to reassign Mr. Kelly to a Level 7 or lower tower and invited Mr. Kelly to provide input about specific locations to which he preferred to be reassigned. *Initial Decision* at *3; R.A. 30–34.

Mr. Kelly identified three preferred locations for a reassignment: Atlanta Hartsfield/Jackson, Atlanta Center, and PDK. *Initial Decision* at *3; R.A. 35. Atlanta Hartsfield/Jackson and Atlanta Center, however, required higher level certifications than Mr. Kelly possessed. *Initial Decision* at *3. The Agency then performed a search for vacancies at locations matching Mr. Kelly's certification level and offered Mr. Kelly reassignment back to PDK or to the Level 5 facilities of Poughkeepsie, New York or St. Thomas, U.S. Virgin Islands. *Id.*; RA 38–39. Mr. Kelly signed a memorandum stating that he voluntarily accepted a reassignment to PDK. *Kelly v. Dep't of Transp.*, 121 M.S.P.R. 78, 2014 MSPB Lexis 4752, at *3 (2014) ("*Final Order*"); R.A. 36–37.

After Mr. Kelly's reassignment from TRACON/A-80 to PDK, Mr. Kelly filed an Equal Employment Opportunity complaint at the Agency in which he asserted that his reassignment was involuntary because the decision to terminate his training was "discriminatory based upon his race, gender, and age." *Initial Decision* at *3. The Agency found that no discrimination occurred, and Mr. Kelly appealed to the Board. *Id.*

The administrative judge, without conducting a hearing, dismissed Mr. Kelly's appeal for lack of jurisdiction, and held that Mr. Kelly failed to make a non-frivolous allegation that he had suffered an involuntary

reduction in grade or pay. *Id.* at 5–9. Mr. Kelly petitioned for review to the Board, which denied the petition and affirmed the administrative judge. *Final Order* at \*8.

Mr. Kelly timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

We must affirm the Board's decision unless it was (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c). We review the Board's decision regarding its own jurisdiction de novo. *Palmer v. Merit Sys. Prot. Bd.*, 550 F.3d 1380, 1382 (Fed. Cir. 2008).

Mr. Kelly bears the burden of establishing that the Board has jurisdiction over his appeal. 5 C.F.R. § 1201.56(a)(2)(i); *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1328 (Fed. Cir. 2006) (en banc). Mr. Kelly is entitled to a Board hearing on the issue of jurisdiction only if he has made a non-frivolous allegation that, if proven, would demonstrate that the Board has jurisdiction. *Garcia*, 437 F.3d at 1344. Here, the Board's jurisdiction turns on whether Mr. Kelly has overcome the presumption that his reassignment was voluntary. The Board does not have jurisdiction over voluntary reductions in grade or pay. 5 U.S.C. § 7512; 5 C.F.R. § 752.401(b)(9). Mr. Kelly's reduction in grade and pay is presumed voluntary because he accepted the Agency's proposal that he be reassigned to the PDK location. *See Gaudette v. Dep't of Transp.*, 832 F.2d 1256, 1258 (Fed. Cir. 1987). Mr. Kelly's presumptively voluntary reassignment was constructively involuntary, however, if it was based on misinformation, deception, or coercion. *Garcia*, 437 F.3d at 1328.

Mr. Kelly alleges that he "was subjected to training which he deemed discriminatory and hostile" and "[u]nder such environment [he] received negative evaluations" that led to his termination from the TRACON/A-80 training. Plaintiff's Br. at 2. And, in his arguments to the Board, Mr. Kelly alleged that "he was treated differently than other employees due to his race, gender, and age." *Final Order* at *6. These conclusory allegations do not demonstrate that Mr. Kelly's reassignment was involuntary. Mr. Kelly cannot demonstrate that his reassignment was based on alleged misinformation, deception, or coercion simply by deeming his training environment to be discriminatory and hostile, without a hint of further explanation. Nor can Mr. Kelly meet his burden by stating generally that he was treated differently due to his race, gender, and age. Discrimination can be found without evidence that the discriminatory conduct related to Mr. Kelly's decision to accept reassignment, or that the discriminatory conduct was so serious as to compel him to take reassignment. *See Conforto v. Merit Sys. Prot. Bd.*, 713 F.3d 1111, 1120 (Fed. Cir. 2013). As *Conforto* confirms, some on-the-job discrimination, though wrongful, is not necessarily grave enough in its effects to compel an employee's actions. *Id.* Mr. Kelly provided very little argument and no supporting evidence to suggest that agency officials caused his training failure. To the contrary, the record indicates that the decision to terminate Mr. Kelly's training was unanimous among several trainers, and was reached only after months of well-documented retraining efforts failed.

Mr. Kelly focuses much of his appeal on the Agency's offer to reassign him to PDK, New York, or the U.S. Virgin Islands. Mr. Kelly listed PDK among his three preferred locations, and the Agency honored his request by including the PDK location in the reassignment choices it presented to Mr. Kelly. Mr. Kelly chose reassignment to PDK, but alleges that his reassignment was involun-

tary because the other two locations—New York and the U.S. Virgin Islands—were not viable options as they were below his Level 7 certification and were not within a reasonable geographic location. Mr. Kelly alleges that there were over forty Level 7 and thirty Level 6 facilities within the same geographic parameters. The record, however, shows the Agency performed a job search for positions that met Mr. Kelly's placement criteria, which indicates that the Level 7 and Level 6 facilities identified by Mr. Kelly did not have any open positions. R.A. 38. Mr. Kelly did not allege to the contrary, and having to choose between unpleasant alternatives does not make a decision coerced or involuntary. *See Gaudette*, 832 F.2d at 1258–59.

Mr. Kelly makes several new arguments on appeal, including that the Agency failed to act in good faith in finding locations to offer to Mr. Kelly for reassignment. Mr. Kelly also asserts, without providing evidence or citations to the record, that the Agency made several errors in his training and evaluations, and failed to give proper feedback. To the extent that these claims contain factual allegations that differ from those we have already discussed, Mr. Kelly did not make those arguments to the Board, and we decline to consider them. *Frank v. Dep't of Transp.*, 35 F.3d 1544, 1559 (Fed. Cir. 1994) ("[W]e do not consider issues that were not raised in the proceedings below.").

We have considered Mr. Kelly's remaining arguments and do not find them persuasive.

### AFFIRMED

No costs.